Good morning, Your Honor. Shao Wang for Petitioner Robert Stanard. I'd like to reserve three minutes of my time for rebuttal. All right. I'll try to help you out with your eye on the clock as well. Okay. Great. Your Honor, I may please the Court. This case presents the question of whether a federal prisoner may seek a damages action against federal prison officials for violating his constitutional rights for depriving them of adequate medical treatment. The answer to that question is yes. It was yes in Carlson v. Green. It was yes in this Court's decisions in Gillespie and McCrae and Reed. It's yes in this case. It's yes because unlike the Jackson case that we just heard, this case arises in the very same context as Carlson v. Green. Because like Carlson, we have a federal prisoner. Like Carlson, we have a federal prisoner who is deprived of adequate medical treatment. And like Carlson, that deprivation led to a plausible allegation of the violation of his constitutional rights, namely his Fifth and Eighth Amendment rights. And in addition, like Carlson, the rank and file of the defendants here are the very same rank and file of the defendants at issue in Carlson. It seems to me, Counsel, that you've got to map this case onto Carlson because if not, and we move into the new context arena, that's a pretty, let's just say almost impossible challenge post-Eggbert. So in terms of whether this does, in fact, map onto Carlson, there's an argument that this challenge is really to BOP policy rather than the application of that policy. Tim, can you address that question? Sure, Your Honor. We think that the policy-based criticism actually misreads the complaint. We think the complaint says that each of these defendants essentially said or tried to invoke the policy as sort of a free pass on liability. But if you look at their actions, their actions themselves raise plausible allegations of unconstitutional conduct. And that is exactly what Bivens is supposed to address. I think, as we note in our brief, had defendants simply, in any of these other Bivens cases, in Carlson, in Davis versus Passman, or in any of this circuit's Bivens cases, if they had merely said, look, I was following the policy, but in terms of my actions, I was not sufficed to, as a defense against liability. And I think here we see that each of the individual defendants were part of a committed individual wrongdoing resulting in a delay or denial of medical treatment, adequate medical care. So let me ask you about, assuming you have a Bivens cause of action under the Eighth Amendment, why does this complaint state a claim under the Eighth Amendment? The allegations in the complaint seem to be, you did a test and you shouldn't have relied on it because it was too old. And you had a policy and it was a dumb policy. How does any of that arise to what the Eighth Amendment requires, which is either deliberate indifference or knowingly causing damage to the prisoner? Certainly, Judge Horwitz. I think to respond to that, I think it's important to acknowledge the posture of this case. I think the district judge here and an opposing counsel point to summary judgment cases, which talk about the specific types of factual evidence that are produced as the case evolves. But here we're at the motion to dismiss stage, and I think taking that . . . But the allegations in the complaint, I think fairly, are the ones you and I have just described. The magistrate judge looked at them and said, that doesn't state a claim under the Eighth Amendment, even if you have one. The district judge, to be fair, said, I'm not going to reach that because there's no Bivens. I'm not going to reach that. But why shouldn't we reach it? Well, I think we shouldn't reach it because this complaint, this particular complaint, similar to this court's cases in Broughton and the Supreme Court case in Erickson, does at the very least allege plausible allegations of deliberate indifference because it suggests a delay or a denial of care. During Mr. Stenard's time at Sea-Tac, he was never given direct acting antivirals. He was only done so when he transferred to a separate facility. It strikes me as a wonderful malpractice case, but I'm not . . . I'm having difficulty, I think, as the magistrate judge did, seeing it arising to the much higher level that we require for the Eighth Amendment. So I suspect what you're telling me is that we ought not reach that issue and let the district judge reach it in the first instance? Well, I think just sort of three responses. Certainly one way is to let the district judge . . . Because the government's motion to dismiss has now never been adjudicated on that ground. Correct, correct, Your Honor. I think one, certainly one way is to ask the government and ask both parties to return to the district court to litigate this on the merits question, to answer the antecedent Bivens question, but to nevertheless leave to the magistrate judge to conduct the sort of detailed . . . excuse me, the district judge to conduct the sort of detailed analysis that wasn't conducted here. I think should the court decide to reach it, though, just to . . . Don't wish for that. Yeah. I think you're going to want a remand on this one. I think the remand . . . Absolutely. Absolutely. Assuming you get past the Bivens. I think the difficulty that I have, and I struggle with the same issue, I suspect we're in the same place as Judge Hurwitz. He was pro se below. Yes. The district court never decided the Eighth Amendment claim, the cognizability of the term. Now, when he goes back, I understand that pro se pleadings are liberally construed, but this might be one that could benefit from amendment. Is he going to be counseled below as well? I think that we haven't really thought that far in my discussions with the client. I certainly think that given the deprivations at issue here and given the seriousness of this case, I think that is certainly a consideration. Of course, he could move for appointment of counsel as well. It is something that we're in active discussions about. To your point, Judge Nguyen, we think that at the very least, remanding this below and allowing for amendment, which again, was not something that was contemplated by either the mastery judge or the district judge, would be an appropriate next step in this particular instance. Can we turn to your Fifth Amendment claim? Absolutely. This is a new context, is it not? Well, we think that this, in fact, arguably, plausibly could fall within an existing context. I think you get there in a creative way. The only existing context we have from the Supreme Court, and the Court says we're the only people that create existing contexts in the Fifth Amendment, is really an equal protection claim for employment discrimination. The Court was pretty clear. I'm not sure that Justice Gorsuch wasn't actually telling the truth, but we can assume for the moment that there is some small window there. This strikes me as very different than the single instance in which the Court has recognized the Fifth Amendment claim. Why am I wrong about that? Well, certainly, Your Honor. I think getting to this being an existing context, it's certainly a more circuitous route. I think, to your point, perhaps your instincts would say it is, in fact, a new context given some of the differences. Because that was going to be my second question, if it is a new context, why should we recognize it? Certainly. I think if one were to consider this a new context, and I'll tackle that first before talking about the existing context. I think that if one were to recognize this as a new context, this is one of those unique cases that sort of falls within the intersection of the existing cases of Davis and of Carlson, and that interplay between those two cases, especially, and I'll just add sort of as a final point, especially given the specific circumstances where this arises within the federal prisoner context. Don't you, assuming you prevail on your notion that you have an Eighth Amendment claim, can we consider that to be the kind of remedy that doesn't make it necessary for us to extend this into the Fifth Amendment area? I understand you're complaining about different things, but wouldn't you get complete relief under your Eighth Amendment claim if you could prove it? Certainly. Certainly, Your Honor. I think if this were remanded and if there were sort of a, if this court were to, if  motion for summary judgment and others, if we were to prevail on the Eighth Amendment, I think that could arguably make Mr. Snard whole without considering the Fifth Amendment claim. So let me ask the question slightly differently. Is there any circumstance under which you would, on the merits, fail on your Eighth Amendment claim, but nonetheless prevail on your Fifth Amendment claim? I mean, if they weren't deliberately indifferent, in part because one of the reasons you said they were deliberately indifferent was they were following a policy and not looking at How would you prevail on your Fifth Amendment claim? Candidly, Your Honor, I'm not sure. I'm not sure. I'm not either. I'm not trying to trap you. Yeah. I'm not, I'm not sure on the answer to the question. I think, you know, my gut says that there are sort of some serious issues with treating holdover detainees, different from pretrial detainees, different from sentenced inmates and the lack of justification on that point. But to your point, and I think to your question, all of that sort of arises from the adequate medical treatment question, right, which I think is intertwined with the Eighth Amendment question. So I think, you know, without having a sort of a clear answer on this, I think they are so intertwined that if one were to allow Mr. Snard to proceed with his Eighth Amendment claim, that in many ways that may sort of also answer or give him the relief such that the Fifth Amendment claim would not necessarily need to proceed going forward. I know you wanted to save a little bit of time, but Judge Parkinson has a question. Yeah. I just wanted to ask you a little bit more about the policy issue because the government, you know, has made a significant point about sort of the implications of there being conformity with policy or not conformity with policy as relating to this sort of new world of living conditions context. And I'm just trying to understand how you understand that issue because, you know, it seems to me that just having a new policy or any policy doesn't equal new context. Because if it does, you could have an incredibly broad policy that says we don't have to treat anybody. For example, that's a new context. And then you eliminate the ability to proceed on Bivens at all. So I just wonder how you sort of react to that issue, whether you see it as a red herring. It's certainly significant from the government's perspective. How do you think about it? Yes, Your Honor, I think it's important to differentiate that following the policy isn't the same as following one's constitutional requirements. And in fact, on page 33 of the government's brief, they acknowledge that point. In addition to that, I think that the policy here specifically says on the very first page that proper medical practice, quote, necessitates all cases are evaluated on an individual basis and the treatment decisions are patient-specific. We think that a categorical denial of care based on APRI scores or based on status is not that. It takes into account the physical symptoms that Mr. Sennard suffered, the inability to eat, the inability to swallow, the bloating of the liver. It's a highly fatal disease if not treated. This isn't a toenail case. Correct. Exactly so, Your Honor. And I think that given, again, the policy itself says that because of the need for individualized care, which we do not see here, what we see here, I think, under the allegations in the complaint are a categorical denial of care based on APRI scores and based on detainee status at a specific institution of individual wrongdoing. That is what I think gives rise to a Bivens action. And with that, if I could reserve the remainder of my time for rebuttal. All right. Thank you.  Good morning, and may it please the court, Tanya Culbertson on behalf of the defendants. Here Mr. Sennard's own allegations show that he was provided individualized care, and we have been talking a lot about his allegations regarding But that's the failure to state a claim issue, is it not? In other words, we've got two separate issues. One is, is this complaint the kind of one that's close enough to Carlson so it doesn't present a new context? And then the second one is, does it state a claim under the Constitution? On the second one, it's a pro se complaint and might get fixed. We don't know. Assuming that we're not going to dismiss it on that basis, and the district court didn't, why does that have any relevance to whether or not it's a new context? So I just want to make one quick point on amendment because that's been suggested as a route that could be pursued here. I would just point out that Mr. Sennard has had two opportunities to allege something approaching a Carlson claim. At this point, based on what he has alleged, he would need to directly contradict the factual assertions he made in his two prior complaints. I understand that they were ... I understand your position, and I think you heard me say to counsel, looking at this complaint right now, it's hard for me to disagree with the magistrate judge that it doesn't state a claim. But I'm asking you to assume for a moment, to focus for a moment on the Eighth Amendment side of this. Sure. On the whether or not this is so different a complaint from Carlson that it presents a new context. Sure. And I think it is a very different complaint from Carlson that does present a new context. Here we have an inmate who is complaining because there was a delay in his treatment after individualized review of his circumstances under the applicable policies. That is not at all what happened in Carlson. This is where I'm having some difficulty with the Supreme Court's jurisprudence. What does a new context mean? Obviously, the facts in the next case will be different than the one before because ... necessarily, they're always different than the one before. But the claim here is the same claim as made in Carlson, which is the Eighth Amendment was violated because I wasn't provided with appropriate medical care. So at what level of specificity must the context be the same? I think more specifically than what you just expressed, which is, you know, it's an Eighth Amendment claim, perhaps the same mechanism of injury in a prison. If Carlson ... Carlson doesn't, but let's say Carlson involves a botched appendectomy because it was performed by an unlicensed person. Does that mean that the only claims that are in the same context are botched appendectomies? I don't think it has to be that exact of a match. Neither do I. So help me determine where in the middle you think the line is. So what I would say, I think, you know, the inquiry has been somewhat collapsed between, you know, different factual circumstances and new special factors. But I do think that it is clear that new special factors, and actually Abbasi is clear that new special factors that were not, excuse me, considered in a prior case do bring that case ... bring that case outside of the context. And so here, the special factor that I would point to, which is very new, is the potential system-wide impacts of allowing inmates like Mr. Stannard to bring challenges after receiving individualized medical attention because he does not agree, you know, in conformance with the policy that he does not agree with. You know, you keep saying individualized medical attention. Individualized, bad, unconstitutional medical attention is not, you know, you can't just, and I'm talking hypothetically, you can't just characterize it as receiving individualized medical attention. So I don't understand the characterization. And I don't understand the broad policy floodgates argument either because clearly when you're dealing with medical care with folks that are incarcerated, you're dealing with a, you know, you're dealing with the fact that they don't have the options to go anywhere else. And when you're dealing with a fatal disease and you're dealing with a failure of an administrative process to even respond to his request and you're dealing with ongoing significant symptoms, you're dealing with a manual that itself or a policy itself says, you know, doctors still have to make individualized assessments. You know, I can't think of ... I think there are very few doctors that would say if something's in a policy in black and white, I can't still exercise my individual judgment when I look at symptoms and evaluate seriousness. And the policy itself provides for three separate categories of assessments of the need to provide this. Plus you're dealing with outdated testing. So, you know, I guess I'm just reacting to the he received individualized medical care as if that is somehow significant. Sure. And I think there's a few different things that I'd like to push back on and what your honor just said. First, and I'll have to sort of take these one at a time, but as to, you know, outdated testing, he was receiving ongoing testing of his APRI scores before he asked to start receiving treatment in March of 2018, all the way through into early 2019 when treatment was initiated. And so ... Are those allegations of the complaint? Yes, those are found in his complaint and the supporting documentation that he provided along with it. Again, tell me why that just means, doesn't mean his claim fails as opposed to his legal claim is you provided me with grossly inadequate medical treatment, whether it was individualized or, or standardized. And I suffered as a result. It may be that you have the world's best defense against that, but I'm not sure why that makes it a different context than Carlson. Maybe then the distinction that would be helpful is the fact that there is no dispute that the medical care that was provided in Carlson was below any sort of reasonable medically accepted ... That's precisely what he's claiming here. He may be wrong. See, and that's why I keep trying to keep you away from the merits on which I think on this complaint, you've got a very strong argument to the eighth amendment cause of action. People may bring, somebody in Carlson's position may bring exactly the same case and have no facts to support it. They may not have ignored the person. They may have been there every day. They may have called in the Mayo Clinic and therefore his complaint doesn't state a claim, but I'm not sure why that means it's in a different context. Because Egbert says that it, and Abbasi in prior, he used to say that it is not enough, that it is just an eighth amendment claim in a prison context. Right, but we've got more than that. So I think what's helpful to the plaintiff in this case is Carlson, right? And so if he can map his claim onto Carlson, a deprivation of adequate medical care when you're facing a serious situation, which is what he's alleging, remember what the motion to dismiss stage with a pro se complaint where every inference has to be drawn in his favor, the complaint has to be liberally construed. So within that framework, as I understand it, I know you're raising BOP policy that set that aside for now because there's the possibility of amendment. But the gist of what he's saying is that look, prison officials ignored my complaints, relied on outdated medical records, and didn't provide me with adequate care in a potentially life-threatening condition. How is that meaningfully different from Carlson? Because if it isn't, then you don't have a new context, right? So what are the meaningful differences between the allegations here and the facts of Carlson? I know that the court is going to tell me to not step into the merits, but with respect, that's what I have to do here. If we look at his- Maybe the Supreme Court has forced you to do that by not giving anybody clear guidance. So go ahead. I want to hear your answer. I would just say, Your Honor talked about mapping this onto Carlson. Looking at his own allegations of the fact that he is included in his two amended complaints and the supporting documentation that he has provided, he cannot map it onto Carlson. In order to map it onto Carlson, at this point, he would have to amend and allege exactly the opposite from what he has already alleged. Well, how is that? He's got a serious medical condition, right? He's alleging that he was deprived of adequate care, that his complaints were ignored. So as to he was deprived of adequate care, he describes all of the care he received. He was referred to an ear, nose, and throat doctor. He was going to get an endoscopy. But really, I mean, really, if you get to the summary judgment stage, you'll probably have an expert. He'll talk about potentially egregious medical care. He'll talk about his liver symptoms, his body aches, all the other things that are going on. So, you know, we're in, you know, you're talking about concrete and we're in the world of the hypothetical at this point. He does have allegations in his complaint, if you read them, you know, fairly, which we're obligated to do for a pro se, which talk about extremely, you know, arguably substandard medical care, whether it rises to a constitutional standard or not. It's hard to, it's hard to address at this point. So I guess, you know, I'm just, I'm not following you. Our position is that simply that you cannot be given leave to amend to then allege contrary facts to what you have alleged in the prior challenged pleading. And there is a line of cases. Right. Because now there's a possibility, there's no commitment, but possibility of being counseled on remand. So why isn't that the appropriate remedy here? Even if we agree with you that this complaint isn't enough to present a new context. And your Honor, simply put, because he would have to, in his amended complaint, counseled, make allegations that directly contradict the allegations he's already made and the supporting documentation. But I don't even think that's, I don't think that's accurate. He can supplement his record. The allegations that he has there that are independent of any policy issues are still there. You know, it's not that this sort of rule of, you know, the inability to contradict one's pleading is necessarily here. That's unclear. I mean, that would not be for us to decide anyway. Can you address the Fifth Amendment? Certainly, Your Honor. I think this is clearly a new context because, as you pointed out, Judge Hurwitz, the Vivens remedy that has been created is for a Fifth Amendment equal protection violation in an employment context, there in the case of a congressperson, and never in a prison. I think we've addressed at length in our brief, you know, why this sort of interplay of Carlson and Davis argument doesn't work. Carlson clearly did not, that is the case in the prison context, and that clearly did not recognize the Fifth Amendment equal protection claim. And, you know, in case there is still any doubt in anybody's mind, I would just point the court to what happened in Carlson on remand from the Supreme Court. It went back to the district court and it proceeded back up to the Seventh Circuit only on the Eighth Amendment claim. So, to the extent that there's any argument that everybody understood sub silentio that this was allowing a Fifth Amendment claim to proceed, I just don't think that's accurate. The citation for that Seventh Circuit case, it's from 1987, and it's 826 F. 2nd 647. Of course, all of the special factors, which, you know, my co-counsel in the other case addressed more, you know, more fully. We haven't even really gotten to the special factors here, but there is, you know, the administrative remedy process through the prison, and, you know, he may argue, well, I didn't get the treatment that I wanted through that process. But what he did get was a review of the constitutionality of the medical care he was receiving, and at every level of that review, everybody looked at his records, looked at his health services files, which, of course, we don't have in front of us, but we have an indication that they were reviewed. And from 2009 all the way until, you know, November of 2018 and into early 2019, there was no indication from any of those records that he met the guidelines. And I will just say, I understand that he has made some allegations of, you know, pain, bloating, things like that, but I would also just point to the fact that he acknowledges himself that they were transient and that often they would only last a day or so, and that, you know, it is conclusory to say everybody knows hepatitis C is a serious disease, but it is not always and immediately serious to the point where we're in a circumstance where prisons have, you know, limited resources. It is not an infinite resource to provide health care to prisoners. I'm sorry, you're minimizing the effect of hepatitis C. I mean, that's a medical opinion. I don't think that's appropriate for you to do that. Your Honor, I'm sorry. I definitely did not want to be seen as minimizing the effect of hepatitis C. I will just say that the BOP took hepatitis C very seriously, constantly was revising its guidelines, and was monitoring its inmate population, or certainly was monitoring Mr. Standard very carefully for any signs of advanced fibrosis in his case that would indicate a need to receive treatment while he was, before he was designated to his facility for sentencing. So I apologize if that sounded at all like I was minimizing a serious disease. All right. Thank you. Can we give Ms. Culbertson the rest of the week off? I would love that, Your Honor. Thank you very much. We ask that you affirm. Thank you, counsel, for your argument today. There's no more time. Your Honor, just two very brief points. The first point that my opposing counsel raised was about the Administrative Remedy Program. And we think that that program, in fact, militates in Mr. Stenard's favor here in finding a Bivens context. Because under that program, the PLRA specifically states in Section 1997   but it does not preclude, it does not preclude a Bivens action. It merely is a precursor to such an action. And I think that is something where Congress knew Bivens actions existed and it codified them within the PLRA's text itself. I think I just want to briefly conclude, Your Honor, by sort of directing, we've heard a lot of conversation today about, and a lot of questions about Abbasi and Egbert, and I would just direct the Court's attention to Egbert unconstitutional acts by individual officers. And Abbasi complements that by saying, quote, that Bivens is especially appropriate for cases which, due to their very nature, are difficult to address except for damages actions after the fact. We think this case fits within those confines. We think it is because there is individual acts of wrongdoing by Sheridan, not at other facilities. In addition to that, there is no other remedy available for the months that Mr. Stenard suffered. Now, just to be clear, just to be clear, we are not saying that on remand that Mr. Stenard would prevail on the merits. We are not saying that. What we are saying is that Bivens provides him an opportunity to present that legal cause of action. Merely an opportunity to present that legal cause of action. And we think that under the guidance in Bivens, under the guidance in Carlson, under the guidance in Abbasi, and even post-Egbert, that that continues to remain viable for an inmate who is deprived of adequate medical treatment. So with that, and if there are no further questions from the Court, we urge that this Court reverse and remand the District Court. Thank you very much. Thank you very much, counsel, both sides for your argument today. Very helpful. The matter is submitted. The next case is Cruz v. City of Spokane.
judges: NGUYEN, HURWITZ, Pregerson